**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TEDDY N.,**

                **Plaintiff,**                          **8:18-cv-234
                                                                             (GLS)**

                v.

**NANCY A. BERRYHILL, Acting
Commissioner, Social
Security Administration,**

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Legal Aid Society<br>17 Hodskin Street<br>P.O. Box 648<br>Canton, NY 13617 | CHRISTOPHER E. COOPER,<br>ESQ. |
| **FOR THE DEFENDANT:**<br>HON. GRANT C. JACQUITH<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | AREILLA R. ZOLTAN<br>Special Assistant U.S. Attorney |
| Ellen E. Sovern<br>Acting Regional Chief Counsel<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe
Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Teddy N. challenges the Commissioner of Social Security's denial of Social Security Disability Insurance (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Teddy N.'s arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

Teddy N., who was forty-five years old when he commenced this action, alleges that he is disabled primarily as a result of a car accident in 2009. (Tr.[1] at 480.) In 2014, he filed applications for DIB and SSI benefits. (*Id.* at 203, 204, 322-28, 355-61.) When his applications were denied, (*id.* at 44-45, 205-08), he requested hearings before an Administrative Law Judge (ALJ), (*id.* at 46, 210), which was held on April 5, 2016, (*id.* at 174-93), and continued on August 31, 2016, (*id.* at 157-73). On October 21, 2016, the ALJ issued a decision denying Teddy N.'s claims for DIB and SSI

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

benefits, (*id.* at 7-35), which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review, (*id.* at 1-6).

Teddy N. commenced the present action on February 23, 2018 by filing his complaint, wherein he seeks review of the Commissioner's determination. (*See generally* Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 9.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 14, 15.) On October 31, 2018, with permission from the court, Teddy N. filed a reply brief. (Dkt. Nos. 19, 20.)

### III.  Contentions

Teddy N. contends: that (1) the ALJ erred in weighing the opinions of record; and (2) "[t]he ALJ failed to properly weigh medical opinions and failed to establish a residual functional capacity (RFC) supported by substantial evidence." (Dkt. No. 14 at 2, 20-25.) The Commissioner counters that the decision "is supported by substantial evidence in the record, and is based upon the application of correct legal standards." (Dkt. No. 15 at 1.)

### IV.  Facts

3

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 13-28; Dkt. No. 14 at 3-18; Dkt. No. 15 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weight Afforded to Medical Opinions

First, Teddy N. argues that the ALJ erred in giving greater weight to the non-examining medical expert, Dr. Steven Goldstein, and consultative examiner, Dr. Elke Lorensen, than to the treating medical providers. (Dkt.

---

[2] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

4

No. 14 at 20-23.)  The court disagrees.

### 1. Dr. Goldstein

After reviewing the medical record, Dr. Goldstein opined that Teddy N. was able to frequently lift and carry up to ten pounds, occasionally lift and carry eleven to twenty pounds, as well as sit, stand, and walk for a total of six hours each day during an eight-hour workday.  (Tr. at 767-68.) These findings were consistent with the findings of Dr. Lorensen, (*id.* at 560), as well as other findings of Dr. Goldstein, (*id.* at 769-72).  As the ALJ noted, (*id.* at 22), there was some evidence in the record demonstrating Teddy N.'s complaints of tenderness and limited range of motion in his right shoulder and pain in his right ankle but "few other chronically positive objective clinical findings," such as deformities or swelling, (*id.* at 450, 496-504, 523).  There was also evidence of normal alignment and position in his shoulder.  (*Id.* at 464.)  Moreover, Dr. John Savage, a treating orthopedic specialist, found full flexion and extension, intact sensation, stable ligaments, and no effusion or erythema in Teddy N.'s right knee, as well as no muscular asymmetry or scapular winging in Teddy N.'s right shoulder.  (*Id.* at 545.)  Dr. James Newman, also a treating orthopedic specialist, found that Teddy N. had normal coordination, stability, sensation

in upper extremities, and that his shoulder muscle appeared "well healed." (*Id.* at 604-606.) There was also evidence in the record of Teddy N.'s full motor strength in upper and lower extremities and spine. (*Id.* at 559, 804.) It was also noted that Teddy N. had limited range of motion in his right upper extremities, but full range of motion and normal strength in his left upper extremities. (*Id.* at 819.) Additionally, several exams found that Teddy N. had a normal station, gait, and/or coordination, (*id.* at 588, 735, 804, 810, 819), and that he "ambulates well," (*id.* at 692, 910, 913). Despite reports of increased pain, as well as signs of arthritis and moderate degenerative changes, (*id.* at 599), upon examining Teddy N.'s ankle in May 2014, treating physician, Dr. Frederick Lemley found normal reflexes, normal alignment and coordination, no instability, no tenderness, and full strength, (*id.* at 588). Although Dr. Lemley opined that Teddy N. was "[not] cut out for activities similar to construction, or standing for extended periods of time," he also found that he "is capable of sedentary work and limited amounts of walking and carrying." (*Id.* at 592.)

  Furthermore, there is evidence in the record that Teddy N.'s physical therapy significantly improved his range of motion such that he was able to work in the grocery store after his disability onset date and was able to lift

6

boxes as long as he did not use his right arm. (*Id.* at 474, 478.) In fact, as of 2015, NP Erin Dupree encouraged Teddy N. to increase his daily physical activities and discussed his use of an exercise bike. (*Id.* at 807, 810.) Additionally, there was evidence that, despite living alone, Teddy N. was able perform activities of daily living: he could drive, take public transportation, prepare food, do general cleaning, laundry, and shopping, as well as dress, bathe, and groom himself. (*Id.* at 552, 554.) He was also able to tolerate a 100-mile round-trip car ride for an examination. (*Id.* at 552.) At the hearing, Teddy N. himself testified that he could drive, (*id.* at 187), wash dishes, and walk to the grocery store to shop, (*id.* at 192). Teddy N. also testified that he took care of a small dog, (*id.* at 188), and he previously reported to treating physician Dr. Lai Kuang that he walked his dog, (*id.* at 721, 727).

Additionally, to the extent that Teddy N. argues Dr. Goldstein's opinion was not based on "the additional opinions of Dr. [Stephen] Robinson and [NP Laurie] Brown[, which] reasonably could have changed [his] opinion," (Dkt. No. 14 at 20), those opinions were largely cumulative of other findings in the record reviewed by Dr. Goldstein. (*Compare* Tr. at 783-84, 839-40, *with id.* at 568-73, 610-11, 655-56, 694-95, 749-50.) The

court agrees with the ALJ's finding that these records would not have significantly altered Dr. Goldstein's findings, (*id.* at 21), and, thus, it was appropriate for the ALJ to assign great weight to such findings. *See Camille v. Colvin*, 652 F. App'x 25, 28 & n.4. (2d. Cir. 2016) (holding consultative expert's opinion was not rendered stale simply because he did not review subsequent treatment records and medical opinions, and, as such, ALJ was entitled to assign great weight to expert's opinion where the subsequent treatment notes and opinion evidence did not differ materially from the evidence he reviewed).

    Finally, to the extent that Teddy N. argues Dr. Goldstein's opinion is entitled to less weight because he is a neurologist with a limited understanding of orthopedic-based limitations, (Dkt. No. 14 at 20-21), a physician's specialty is only one of several factors that is considered in assessing the appropriate weight given to his opinion. *See* 20 C.F.R. § 404.1527(c). The ALJ's reliance on Dr. Goldstein's findings was appropriate, given his familiarity with the medical record and his findings' consistency with the record as a whole. *See id.* As such, it was appropriate for the ALJ to give parts of Dr. Goldstein's opinion greater weight than opinions unsupported by record evidence. *See Diaz v.*

8

*Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995). Contrary to Teddy N.'s contention, (Dkt. No.14 at 20), Dr. Goldstein's opinion was not entitled only to limited weight in every aspect. Instead, the ALJ appropriately declined to give weight to Dr. Goldstein's opinions regarding Teddy N.'s limitation using his upper extremities, (Tr. at 23-24), to the extent that they were inconsistent with clinical findings and treatment notes in the record, (*id.* at 560, 767-72). The record regarding these inconsistencies is more fully discussed below in the court's analysis of the appropriateness of the ALJ's reliance on Dr. Lorensen's opinion.

    *2.    Dr. Lorensen*

Teddy N. argues that "Dr. Lorensen's opinion is entitled to little weight as she examined [him] only once and her opinion is inconsistent with the balance of the record." (Dkt. No. 14 at 21.)

It is well-settled that the opinion of a consultative examiner who only examined a patient once can constitute substantial evidence in support of the ALJ's determination if supported by the record. *See Domm v. Colvin*, 579 F. App'x 27, 28-29 (2d Cir. 2014) (finding ALJ properly assigned more weight to consultative examiner's opinion than treating source opinion despite former being based on one-time examination).

9

After personally examining Teddy N. in May 2014, Dr. Lorensen opined that he had no gross limitations sitting, standing, walking, or handling small objects. (Tr. at 560.) Her findings in regards to Teddy N.'s sitting, standing, and walking were supported by her examination notes, (*id.* at 559), as well as Dr. Goldstein's opinion in that regard, (*id.* at 767-68), and the same portions of the record that were consistent with his opinion, as discussed above. Additionally, Dr. Lorensen's finding regarding Teddy N.'s ability to handle small objects parallels the ALJ's reasonable decision to give little weight to Dr. Goldstein's opinion in this regard. That is, the record demonstrated that Teddy N. could bathe and groom himself, (*id.* at 552, 554), as well as perform a range of activities, including cleaning, grocery shopping, laundry, driving, dog walking, and household cleaning, (*id.* at 189-92, 554, 558). Teddy N. was apparently also able to smoke two packs of cigarettes per day. (*Id.* at 510, 612.) Despite occasional numbness in his right-hand fingers, he was found to have "good movement of hand." (*Id.* at 471-72.) The record also supported Dr. Lorensen's finding that Teddy N. had full muscle and grip strength and intact finger dexterity. (*Id.* at 559, 740.) The court agrees with the Commissioner's position that this all "demonstrated that [Teddy N.] was able to perform fine

manipulations with his hands and reach and handle with his upper extremities." (Dkt. No. 15 at 15.)

      *3.*     *NP Brown & Drs. Savage, Robinson, and Lemley*

Teddy N. argues that "[t]he opinions of Drs. Savage, Robinson, and Lemley are entitled to controlling weight as those of treating specialists, supported by the objective evidence, and not inconsistent with the remainder of the record," and "[NP] Brown's opinions . . . are entitled to great weight as those of a nurse practitioner who treated [him] for years and as consistent with several other medical opinions." (Dkt. No. 14 at 22 (internal citations and footnote omitted).) This is largely rebutted by the analysis above, but certain of Teddy N.'s arguments merit further attention.

First, Teddy N. asserts that, in assigning weight to the opinions of NP Brown and Dr. Savage, the ALJ mischaracterized the record. (*Id.* at 21 (*comparing* Tr. at 23, *with* 848-49, 875, 879).) However, even if there was an issue with the ALJ's characterization of the full extent of certain examinations—which is not a compelling argument for the reasons stated by the Commissioner, (Dkt. No. 15 at 20 n.11)—Teddy N. fails to demonstrate that such relatively insignificant discrepancies prejudiced him. *See Beede v. Comm'r of Soc. Sec.*, No. 1:12–CV–1072, 2013 WL

11

5217673, at *4 (N.D.N.Y. Sept. 16, 2013) ("Plaintiff must still establish that he was prejudiced by the Commissioner's [error]."). Instead, the court finds that the ALJ appropriately reviewed and considered the medical opinions provided by NP Brown, Drs. Savage, Robinson, and Lemley, and concluded that they were not entitled to the weight Teddy N. prefers. (Tr. at 22-23.)

That is, although treatment notes in the record suggested Teddy N. had some limited range of motion and tenderness in his neck/shoulder, as well as osteoarthritic changes in his knee and ankle, they generally showed full muscle strength, normal gait, intact sensation, and intact grip strength. (*See, e.g.*, *id.* at 450, 496, 545, 547, 558-59, 604-606, 609, 625, 740.)

Dr. Savage's restrictive opinion that Teddy N. was unable to do things like carry, lift, sit, stand, walk, use his right hand, use his left foot, push, or pull, (*id.* at 568-73, 841-42), is inconsistent with his July 2014 examination that found intact sensation and good reflexes in Teddy N.'s upper extremities as well as no muscle asymmetry and no scapular winging in his right shoulder, (*id.* at 647-48). Dr. Savage also did not examine or diagnose any ankle, knee, or leg issues at that time. (*Id.*)

Next, although Dr. Robinson opined, in August 2016, that Teddy N.

12

was unable to sit, stand, or walk for more than two hours at a time and could only occasionally lift and carry up to ten pounds, (*id.* at 783-84), he also noted a gap in treatment from August 2014 to May 2016 as well as cessation of physical therapy, (*id.* at 879). Moreover, his treatment notes included subjective complaints of pain in the absence of any significant neural compression to account for such pain, (*id.* at 875, 879).

Furthermore, as mentioned, despite finding that Teddy N. should not stand for extended periods of time or engage in activities like construction, Dr. Lemley found that Teddy N. was able to perform "limited amounts of walking and carrying." (*Id.* at 592.) Dr. Lemley's examination of Teddy N. found normal reflexes, normal alignment, no instability, no tenderness, and full strength. (*Id.* at 588.) Although Teddy N. reported "[d]iffuse lateral ankle pain," Dr. Lemley found that it was "nonspecific in nature" and "without objective findings on exam." (*Id.* at 589.)

Lastly, although NP Brown has a treating relationship with Teddy N., it was reasonable for the ALJ to find that her opinion was entitled to little weight. *See Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 346 (W.D.N.Y. 2018) (holding ALJ properly assigned little weight to NP's opinion where inconsistent with record as a whole and contradicted by

13

NP's own notes). That is, NP Brown's August 19, 2014 treatment notes included a normal neurologic examination and diagnosed only cervical radiculopathy, cervical spine stenosis, and numbness, (Tr. at 627), which belied her opinion that Teddy N. was moderately limited in walking, standing, and sitting, and very limited in pushing, pulling, bending, lifting, and carrying, (*id.* at 611). Similarly, NP Brown's treatment notes included normal motor strength, intact sensation in Teddy N.'s lower extremities, and no weakness, which undercut her opinion that Teddy N. was very limited in his ability to stand and walk. (*Compare id.* at 779-80, *with id.* at 840.)

Furthermore, as noted by the ALJ, the opinions that Teddy N. suggests deserved greater weight were significantly undermined by evidence of Teddy N.'s regular activities, (*id.* at 189-92, 554, 558, 721, 727, 733), as well as the improvements with pain medications that he reported, (*id.* at 721, 727).

Therefore, the ALJ appropriately declined to give the opinions of Drs. Savage, Robinson, and Lemley controlling weight, *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's

14

treating physician, the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record."), and appropriately declined to give NP Brown's opinion greater weight, *see Wynn*, 342 F. Supp. 3d at 346.

**B.    RFC**

Based on the evidence of record outlined above, the ALJ found that Teddy N. "can occasionally lift, carry, push, or pull [twenty] pounds; can frequently lift, carry, push, or pull [ten] pounds; can stand and/or walk, in combination, [six] hours total in an [eight]-hour workday with normal breaks; and can sit for [six] hours total in an [eight]-hour workday with normal breaks."  (Tr. at 18.)

Teddy N. faults the ALJ's RFC finding as harmful error because he argues that (1) the ALJ substituted his own opinion for those of medical experts, (Dkt. No. 14 at 23); (2) the RFC is inconsistent with medical opinions, (*id.* at 23-24); and (3) the ALJ erred in evaluating his subjective complaints, (*id.* at 24-25).  The court disagrees.

Given the evidence discussed above, the ALJ properly determined that claimant's subjective complaints were inconsistent with the weight of

15

medical records and his injuries could improve with the proper treatment and medication. (Tr. at 19-20.) Ultimately, the ALJ's assessment of Teddy N.'s ability to perform work-related activities—based upon all of the evidence in the record—was appropriate. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (internal citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.") (internal citation omitted). Because it is supported by substantial evidence, the ALJ's conclusion may not be disturbed. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982) (holding district court cannot substitute its interpretation of administrative record if record contains substantial support for ALJ's decision).

**C.** **<u>Remaining Findings and Conclusions</u>**

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and not based on legal error.

16

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Teddy N.'s complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 29, 2019
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge